## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**KENNETH JAMES NEWKIRK,**

      **Plaintiff,**

**vs.**                 **Civ. No.  06-837 JH/WDS**

**ZURICH AMERICAN INSURANCE
COMPANY,**

      **Defendant.**

### MEMORANDUM OPINION AND ORDER

    This matter came before the Court on cross motions for summary judgment: (1) *Defendant Zurich America Insurance Company's Motion for Partial Summary Judgment* [Doc. No. 24]; (2) *Newkirk's Motion for Summary Judgment on the Issue of Underinsured Motorist Coverage Under the Zurich American Insurance Company Policy* [Doc. No. 26]; and (3) *Newkirk's Motion for Summary Judgment on the Amount of Underinsured Motorist Coverage Under the Zurich American Insurance Company Policy* [Doc. No. 28].  After considering the motions, the briefs, and the law, the Court concludes that Newkirk's motion for summary judgment on coverage should be granted, Zurich American's motion for partial summary judgment on coverage should be denied, and Newkirk's motion on the amount of coverage should be denied as premature.

### FACTS

    The following facts are undisputed, unless otherwise noted.

    On July 30, 2005, Plaintiff Kenneth Newkirk ("Newkirk") was an employee of WWC, Inc., a company which was a named insured on commercial automobile insurance policy No. BAP 3437189-03 ("the policy") issued by Defendant Zurich American Insurance Company ("Zurich").

*See* Ex. 1 to Doc. No. 26.  The policy was in force on that date and provides coverage, including

uninsured and underinsured motorist coverage, to "insureds," subject to the terms and conditions

of the policy.  The policy then defines the term "insureds" as follows:

> If the Named Insured is designated in the Declarations as:
>
> 1.    An individual, then the following are "insureds":
>
>> a. Any Class 1 "insured", meaning the Named Insured and any "family members".
>>
>> b. Anyone other than a Class 1 "insured" "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
>>
>> c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".
>
> 2.    A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":
>
>> a. Any Class 2 "insured", meaning the Named Insured is not an individual Named Insured.
>>
>> b. Anyone other than a Class 1 "insured" while "occupying" a covered "auto" or a temporary substitute for a covered "auto".  The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction. Anyone other than a Class 1 "insured" includes the Named Insured's partners (if the Named Insured is a partnership), or members (if the Named Insured is a limited liability company), "employees", directors or shareholders;
>>
>> c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

Section F(2) of the policy states that "'occupying' means in, upon, getting in, on, out or off."

WWC, Inc. employed Newkirk as a working shop foreman at its Belen, New Mexico shop,

where he performed mechanic work and oversaw the daily operations of the shop.  Newkirk spent

the majority of his time at the Belen shop.  Occasionally, however, his employer asked him to travel

2

to a job site outside of Belen in order to perform mechanical repairs.  WWC, Inc. asked Newkirk

to travel to Gallup, New Mexico on Saturday, July 30, 2005.  The purpose of Newkirk's trip to

Gallup was to install a differential on a truck and to deliver parts needed at a Gallup job site.

Newkirk left his home around 4:00 a.m. on the morning of July 30, 2005, and began the

journey to Gallup.  He was driving a truck owned by WWC, Inc. and was wearing his work uniform.

Because the approaching traffic headlights caused a glare on the truck's windshield, Newkirk

decided to stop at a Fina/Allsup's store (hereafter, "Allsup's") in Belen to clean the windshield.

Newkirk Aff. at ¶ 5; Newkirk Depo. at pp. 28-29.[1]  Newkirk parked a short distance from the fuel

island, where the gas pumps and windshield washer fluid are located.  After stopping the truck,

Newkirk went directly to the windshield washer container on the fuel island and removed the

squeegee, but found it dry.  Newkirk Depo. at pp. 28-29; Newkirk Aff. at ¶ 7; Roberts Aff. at ¶ 5-6.

Newkirk looked for a water spigot so that he could put some water in the container to use to clean

his windshield, but found none.  Newkirk Depo. at p. 29.  He then walked into the Allsup's store for

the purpose of finding washer fluid.  *Id.*  Upon entering the store, Newkirk encountered Allsup's

employee Cherie Roberts.  From inside the store Ms. Roberts had watched Newkirk attempt to wash

---

[1] Zurich contends that this fact is disputed, citing testimony from the Worker's
Compensation trial.  *See* Doc. No. 38 at p. 2.  According to Zurich, an owner of WWC, Inc.
testified that the truck was "steam cleaned" before Newkirk took it from the shop the night
before the accident, and that when he picked up the truck at the Fina/Allsup's the following day,
the windshield was clean.  Zurich also alleges that Newkirk's wife testified that Newkirk always
carried glass cleaner and paper towels in his work truck, and that she saw them in the truck the
night before the accident.  *Id.*  Zurich cites to its Exhibit B for this evidence.  Although Exhibit B
does appear to contain some trial testimony, it does not contain the pages cited by Zurich, and
the pages that Zurich did provide to this Court contain no testimony as described herein.
Furthermore, the Court has examined all of the exhibits provided by Zurich on all three motions
for summary judgment, and still finds no such evidence in the record.  Therefore, Newkirk's
deposition testimony and affidavit regarding the reason he stopped at Fina/Allsup's on the
morning of the accident is uncontroverted.

his windshield and had observed that the squeegee was dry, so she picked up a full bottle of windshield washing fluid and went to the door.  Roberts Aff. at ¶¶ 5-6.  Roberts intended to carry out to the fuel island in order to refill the empty container.  Roberts Aff. at ¶ 11.[2]

When Newkirk encountered Roberts, they conversed briefly.  Though there is some inconsistency in the evidence regarding the exact words they exchanged, it is undisputed that Newkirk conveyed to Roberts his need for windshield cleaner fluid, and that in response she held up the bottle she was carrying and indicated that she was on her way outside to fill the container.  *See* Newkirk Depo. at pp. 32-33; Newkirk Aff. at ¶ 8; Roberts Aff. at ¶¶ 12-13; Kaneshiro Aff. at ¶ 5; Kaneshiro trial testimony, Defendant's Ex. B, at p. 90.  Both eyewitness testimony and the videotape made by Allsup's surveillance camera confirm that Roberts did in fact leave the store with the bottle of windshield washing fluid, and that she went to the fuel island near Newkirk's work truck in order to fill the container.  Newkirk did not follow Roberts outside to the fuel island. Instead, as he waited for Roberts to fill the container outside, he hurriedly poured himself a cup of coffee and grabbed a box of donuts, and was in the process of paying for both items at the counter when a car came crashing through the wall of the Allsup's store.  Newkirk Aff. at ¶ 9; Kaneshiro Aff. at ¶ 8; Smith Aff. at ¶¶ 6-7.  The car struck Newkirk, leaving him partially paralyzed.  In total, approximately two minutes and eleven seconds elapsed between the time that Newkirk entered the Allsup's in search of windshield cleaner and the time that the accident occurred.  Newkirk Aff. at

---

[2] Zurich argues that the Court should not consider any portion of Cheri Roberts' affidavit on the grounds that it contains inadmissible speculation regarding Newkirk's state of mind on the morning of the accident.  While the Court agrees that the affidavit contains some speculative statements (which the Court has not considered), the majority of the affidavit describes Roberts' own observations and actions, and is therefore admissible.  The same is true of the Affidavits of Dale Kaneshiro and Lynda Smith—the Court has considered only those portions which are based upon the affiant's personal knowledge.

¶ ¶ 15-16 and Ex. 1 thereto.  Roberts had just finished refilling the windshield washing fluid container at the fuel island and was walking back toward the Allsup's store when she witnessed the automobile crash into the store.  Roberts Aff. at ¶ 15.

## DISCUSSION

### I.   DOES THE POLICY PROVIDE COVERAGE?

Both parties have filed motions for summary judgment on the issue of whether the Zurich policy at issue provides coverage to Newkirk for the July 30, 2005 accident.  *See Defendant Zurich America Insurance Company's Motion for Partial Summary Judgment* [Doc. No. 24] and *Newkirk's Motion for Summary Judgment on the Issue of Underinsured Motorist Coverage Under the Zurich American Insurance Company Policy* [Doc. No. 26].  Zurich argues that Newkirk cannot establish that he was "occupying" the work truck at the time of the accident, and therefore the policy does not provide coverage.  Newkirk, in turn, argues that he was "occupying" the work truck at the time of the accident, and that he is entitled to coverage for the additional reason that as an employee of WWC, Inc., he meets the definition of an "insured" under the policy.

The Court turns to the latter argument first, and finds it to be without merit.  Newkirk argues that he is an insured solely because he is an employee, and the policy expressly defines "insureds" for UM/UIM coverage to include "employees" of the named insured.  Newkirk bases this argument on his elliptical reading of Section (B)(2)(b), which he construes to provide that when the Named Insured is a company (as is the case here), "then the following are 'insureds': b. . . . Anyone other than a Class 1 'insured' includes the Named Insured's . . . "employees" . . ."  *See* Doc. No. 27 at p. 11.  However, Newkirk conveniently leaves out key policy language that nullifies his position.  As described more fully above, when the named insured is a corporation, Section (B)(2)(b) of the policy at issue provides that an insured is "Anyone other than a Class 1 "insured" *while "occupying" a*

*covered "auto" or a temporary substitute for a covered "auto"* (emphasis added).   The italicized
language modifies the term "anyone other than a Class 1 insured," clearly requiring occupancy for
"anyone other than a Class 1 insured."   In other words, in order to qualify as an insured under this
provision, one must meet two separate criteria: first, he must satisfy the definition of "anyone other
than a Class 1 insured," and second, he must have been "occupying" a covered auto or temporary
substitute.   Newkirk correctly points out that the policy definition of "anyone other than a Class 1
insured" includes employees of the Named Insured—a definition which he satisfies.   However, the
policy also clearly states that such persons, whether they be partners, members, employees, directors
or shareholders of the Named Insured, are covered "insureds" only while occupying a covered auto
or temporary substitute for a covered auto.   This interpretation gives meaning to the entire contract.
In contrast, Newkirk would have the Court simply ignore the phrase "while occupying a covered
auto or a temporary substitute for a covered auto."   However,   " '[a] contract must be construed as
a harmonious whole, and every word or phrase must be given meaning and significance according
to its importance in the context of the whole contract.' "   *Aspen Landscaping, Inc. v. Longford
Homes of N.M., Inc.*, 2004-NMCA-063, ¶ 14, 135 N.M. 607 (quoting *Bank of N.M. v. Sholer*, 102
N.M. 78, 79, 691 P.2d 465, 466 (1984)).

Newkirk's reliance upon *Rehders v. Allstate Ins. Co.*, 2006-NMCA-058, 139 N.M. 536, is
unavailing.   In *Rehders*, the court interpreted policy language identical to that presented in this case.
The *Rehders* "named insured" was a corporation, and plaintiffs were corporate shareholders who
wished to stack uninsured motorist coverage for their son under the corporation's commercial auto
insurance policy.   However, the son was not occupying a vehicle insured by the corporation at the
time of the accident, nor was he connected with the corporation as an officer, director, stockholder,
employee, or agent.   The insurer argued that the son was not an "insured" under the policy and

6

therefore was not entitled to uninsured motorist benefits. The court agreed, concluding first that the son could not be a Class 1 insured, since the named insured was a corporation. *Id*. at ¶ 18. Next, the court observed that because the son was not a partner, member, employee, director or shareholder of the named insured corporation, and because he was not occupying a covered auto at the time of the accident, he was not a "Class 2 insured" under the policy either. *Id*. at ¶ 19. Newkirk seems to interpret *Rehders* as holding that the policy language at issue should be read in the disjunctive, requiring a plaintiff to demonstrate *either* that he is an officer, director, stockholder, employee, or agent of the insured corporation, *or* that he was occupying a covered auto or temporary substitute at the time of the accident. However, the *Rehders* court did not make such a holding. Instead, the court merely pointed out that the son in that case met neither criteria. The *Rehders* opinion does not state that either the proper corporate relationship or occupancy alone is enough to qualify one as "anyone other than a Class 1 insured." Indeed, such a conclusion would be directly contrary to the clear policy language, which states that an "insured" is "anyone other than a Class 1 insured *while occupying* a covered auto . . ." This language is unambiguous.

Next, the Court turns to the question of whether Newkirk was "occupying" his work truck at the time of the accident such that he is an "insured" under the policy. Because it is undisputed that Newkirk was an employee of the Named Insured, WWC Inc., at the time of the accident, the issue of occupancy is determinative of whether Newkirk is an "insured" entitled to underinsured motorist benefits. The analysis begins with the policy's definition of "occupying," which "means in, upon, getting in, on, out or off." However, as both parties appear to acknowledge, this definition may not be viewed in a vacuum because New Mexico courts have repeatedly interpreted this and similar definitions of the term "occupying."

In *Allstate Ins. Co. v. Graham*, 106 N.M. 779, 750 P.2d 1105 (1988), the plaintiff drove her

father's insured car to assist her friend Silva with a blown-out tire, driving to a shop to have the tire

repaired.  After picking up the repaired tire, Plaintiff Graham drove back to Silva's car and parked

the insured car on the side of the road a few feet in front of her friend's car.  Graham got out of the

insured car, removed the repaired tire from the trunk, and took it back to Silva's car.  As Graham

was crouching by the left rear wheel of Silva's car to change the tire, another car ran off the side of

the road, striking both Silva's car and Graham.  The car that caused the accident was uninsured.

Allstate filed a complaint for declaratory judgment contending that Graham was not an "occupant"

of the insured car within the meaning of the policy at the time of the accident.  The policy at issue

defined "occupying" as "in or upon or entering into or alighting from," a definition similar to the

definition at issue in this case.  The Supreme Court found no coverage and concluded that the

plaintiff was not "occupying" the insured car.  The court reasoned:

> We hold that Graham was simply not engaged in a transaction
> oriented to the use of the 1976 Ford at the time of the accident.  The
> purpose of using the 1976 Ford, to deliver Silva's repaired spare tire,
> was accomplished when Graham parked her father's car.  Fixing the
> flat tire on Silva's car was in no way related to the occupancy or use
> of the 1976 Ford.

*Id.* at 780.  Thus, it appears that in *Graham* the Supreme Court adopted a "transaction test" to

determine whether one "occupies" a car for purposes of uninsured motorist benefits.

More recently, the New Mexico Court of Appeals has revisited the issue in a series of

opinions more fully describing the transactional test set forth in *Graham*.  In *Cuevas v. State Farm*

*Mut. Auto. Ins. Co.*, 2001-NMCA-038, 130 N.M. 539, Plaintiff Cuevas was driving the insured car

when he got a flat tire.  Cuevas parked on the side of the highway, but the insured car did not have

a spare tire.  A passing driver of a pickup truck stopped to offer assistance, first driving Cuevas to

his mother's home to get a spare tire and then returning Cuevas to his car by the side of the highway.

Cuevas got out of the good Samaritan's truck and was reaching into the truck bed to retrieve the spare tire when a vehicle driven by an uninsured motorist struck him.  At the moment he was struck, Cuevas was six to eight feet from the front end of the insured car.

The insurance policy in *Cuevas* contained virtually the same definition of "occupying" as the policy in *Graham*.  Relying upon both *Utica Mut. Ins. Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984) and *Graham*, the Court of Appeals reasoned that in order to decide the issue of occupancy, the court must consider a variety of factors, such as the distance in space or time between the claimant and the insured vehicle, the intent of the claimant, the connection between the claimant and the insured vehicle at the time of the accident, the causal relationship between injury and use of the vehicle, orientation of the claimant to the vehicle or highway, and whether the claimant was engaged in a transaction essential to the use of the vehicle.  *Cuevas* at ¶ 11.  After considering all of these factors, the court concluded that Cuevas was occupying the insured vehicle at the time of the accident.  The court emphasized that unlike the plaintiff in *Graham*, Cuevas was attempting to repair the insured vehicle, rather than a different automobile, at the time of the accident, and therefore he was engaged in a transaction relating to the use of the insured car.  *Id*. at ¶ 12.  Next, the court observed that although Cuevas had briefly left the insured vehicle in order to retrieve a spare tire, he had returned to the area and was only ten feet away from it at the time of the accident.  *Id*. Finally, the court found that there was no "intervening cause wholly disassociated from, independent of or remote from the use" of the insured car that would break the causal connection between the plaintiff and the insured car at the time of the accident.  *Id*. at ¶ 13.  In other words, Cuevas' activities at the time of the accident were directly related to continued use of the insured car, and both his intentions and physical actions were engaged in a transaction essential to the use of the vehicle.  *Id*.

In 2003, the New Mexico Court of Appeals addressed the occupancy issue in *State Farm Mut. Auto. Ins. Co. v. Baldonado,* 2003-NMCA-096, 134 N.M. 197.  In that case, Baldonado was a passenger in an insured auto when he encountered another vehicle at an intersection.  After a verbal altercation with the occupants of the other vehicle, Baldonado alighted from the insured car and walked towards the other car in order to confront its occupants.  Someone in the other car fired a gun, and Baldonado retreated toward the insured car.  However, as he retreated, one or more bullets struck Baldonado.  *Id.* at ¶ 1.  In support of his contention that he was "occupying" the insured car, Baldonado argued that his close physical proximity to the car alone was sufficient.  *Id.* at ¶ 17.  The Court of Appeals disagreed, finding that Baldonado was not "occupying" the insured car because he was not engaged in a transaction oriented to the use of the insured vehicle.  *Id.* at ¶ 18.

Most recently, in *Miera v. State Farm Mut. Auto. Ins. Co.*, 2004-NMCA-059, 135 N.M. 574, involved yet another physical dispute between the occupants of two cars at an intersection.  Miera exited the insured Chevy Tahoe and approached the other car, a Ford Mustang.  A confrontation ensued, which culminated in one of the occupants of the Mustang shooting Miera.  *Id.* at ¶ 4.  Once again, the Court of Appeals held that close physical proximity to the insured Tahoe was not enough to conclude that Miera was "occupying" the vehicle.  *Id.* at ¶ 8.  Instead, the court focused on the fact that "there was no causal connection between Miera's being shot and his occupation of the Tahoe," and that "his actions once out of the vehicle were not oriented to the use of the Tahoe."  *Id.*

In addition, given the broad remedial purpose of the Uninsured Motorist Statute, NMSA 1978, § 66-5-301 et seq., the New Mexico courts have construed UM/UIM coverage broadly.  "[T]he UM statute is designed to protect individuals against the hazard of culpable but uninsured motorists and to place the insured in the same position as he or she would have been had the

10

tortfeasor had liability insurance." *McMillan v. Allstate Indem. Co.*, 2004-NMSC-002, ¶ 17, 135 N.M. 17 (2003) (internal citation omitted). *See also State Farm Mut. Auto. Ins. Co. v. Luebbers*, 2005-NMCA-112, ¶ 24, 138 N.M. 289 (stating that the public policy behind the uninsured motorist statute "is to compensate those injured through no fault of their own, and to put the insured in the same position he would have been in had the tortfeasor had liability coverage."). Thus, New Mexico courts interpret the Uninsured Motorist Statute liberally to implement its remedial purpose, and any provision allowing for an exception to uninsured motorist coverage must be strictly construed to protect the insured. *Phoenix Indem. Ins. Co. v. Pulis*, 2000-NMSC-023, ¶ 7, 129 N.M. 395. *See also Chavez v. State Farm Mut. Auto. Ins. Co.*, 87 N.M. 327, 329, 533 P.2d 100 (1975).

The Court concludes that, under New Mexico law, Newkirk was occupying the work truck at the time of the accident. The undisputed evidence demonstrates that Newkirk stopped at the Allsup's store for the purpose of cleaning the windshield on his truck prior to his long drive to Gallup, New Mexico. The evidence on record also shows that Newkirk first tried to clean the windshield outside at the fuel island, and that he entered the store after discovering that there was no windshield cleaner fluid at the fuel island. In addition, the evidence demonstrates that upon entering the store, Newkirk conveyed his need for cleaner fluid to the Allsup's staff. Based on these facts, the Court concludes that Newkirk was focused on a transaction necessary to the safe operation of the insured truck—cleaning the windshield. In this regard, this case is analogous to *Cuevas*. Although Newkirk walked approximately 40 feet away from the immediate vicinity of the truck, he did so in order to facilitate his goal of cleaning the windshield. Again, this demonstrates that Newkirk was oriented towards the safe operation of the work truck. Furthermore, he was away from the truck for such a short time—just over two minutes—as to be essentially negligible. Finally, the evidence shows that it was Newkirk's intent to clean the windshield on the work truck, and to then

11

quickly continue on his work-related journey to Gallup. Newkirk Aff. at ¶ 20.[3]  Witnesses in the store testified that Newkirk was in a hurry when buying his coffee and donuts.  Smith Aff. at ¶¶ 6-7; Kaneshiro Aff. at ¶ 8.

Zurich makes much of the fact that Newkirk elected to stay in the Allsup's store for two minutes and eleven seconds to buy coffee and donuts while Roberts was filling the container of windshield cleaning fluid, arguing that his decision to make those purchases demonstrates that he was not involved in a transaction related to the operation of the truck at the time of the accident, nor was he oriented toward the truck at the time of the accident, nor was there a causal connection between Newkirk's injuries and his use of the work truck.  The Court disagrees.  Zurich has come forward with no evidence to controvert the fact that Newkirk would not have been inside the Allsup's in the first place had he not needed to clean the truck's windshield.  Zurich suggests that if he were truly oriented toward the truck, Newkirk would have followed Roberts out to the fuel island—presumably to stand there and watch her fill the container of cleaning fluid—rather than using that same period of time to buy himself a cup of coffee and some donuts.[4]  Zurich's position strikes the Court as unreasonably narrow.  Presumably, Newkirk had to wait somewhere while Roberts filled the container of windshield cleaning fluid.  There is no evidence in the record to support a claim that by following Roberts outside, Newkirk could have completed the task of cleaning the windshield more quickly.  Indeed, there is no evidence on the issue of whether the

_____

[3] The Court disagrees that this is inadmissible speculation.  Newkirk may testify as to his own intentions and state of mind at the time of the accident.

[4] Indeed, the evidence outlined above demonstrates that it took Newkirk about the same amount of time to buy the coffee and donuts as it took Roberts to fill the container of windshield cleaning fluid. Roberts was walking back to the Allsup's store after completing her task just as Newkirk was in the process of paying for the coffee and donuts.

container of windshield wiper fluid on the fuel island was configured in such a way that Newkirk could have used it to clean the windshield on the work truck simultaneously while Roberts filled the container, and the Court will not speculate as to the answer to that question.  However, it is clear that this case is unlike *Miera* and *Baldonado*, in which both plaintiffs walked away from the insured vehicles in order to start an altercation with passengers in other cars.  It is also unlike *Graham*, in which the plaintiff was engaged in repairing another person's car, not the insured vehicle, at the time of the accident.  Unlike all of those cases, the evidence in the record here demonstrates that at the time of the accident, Newkirk was at the Allsup's store in order to clean the windshield on the insured vehicle—a transaction that demonstrates the causal relationship between Newkirk's injury and his use of the work truck.

Thus, based on the foregoing, the Court concludes that Newkirk was an employee of a named insured who was "occupying" the insured vehicle at the time of the accident, and therefore he is an "insured" under the policy entitled to UM/UIM benefits.  Therefore, Newkirk's motion for summary judgment on this issue will be granted, and Zurich's motion will be denied.

## II.    HOW MUCH COVERAGE DOES THE POLICY PROVIDE TO NEWKIRK?

*Newkirk's Motion for Summary Judgment on the Amount of Underinsured Motorist Coverage Under the Zurich American Insurance Company Policy* [Doc. No. 28] addresses the issue of the amount of coverage available to Newkirk under the policy.  However, the Court concludes that the motion is premature and therefore will not reach the merits.  In his October 24, 2006 Order [Doc. No. 11], Magistrate Judge Schneider ordered that the parties proceed first with discovery limited to the occupancy issue, followed by summary judgment briefing on that sole issue.  Then, only after those motions were decided, the Court would set further discovery deadlines as needed on the remaining issues in the case.  Thus, it appears that the parties have not conducted discovery

13

on the question of the amount of coverage available under the policy. Accordingly, Zurich American argues that the motion is premature. The Court agrees and will deny the motion at this time, but grants leave to Newkirk to refile his motion at a later time consistent with further case management deadlines as ordered by Judge Schneider.

**IT IS THEREFORE ORDERED** that:

(1) *Defendant Zurich America Insurance Company's Motion for Partial Summary Judgment* [Doc. No. 24] is **DENIED**;

(2) *Newkirk's Motion for Summary Judgment on the Issue of Underinsured Motorist Coverage Under the Zurich American Insurance Company Policy* [Doc. No. 26] is **GRANTED**; and

(3) *Newkirk's Motion for Summary Judgment on the Amount of Underinsured Motorist Coverage Under the Zurich American Insurance Company Policy* [Doc. No. 28] is **DENIED as premature**, though Newkirk has leave to refile his motion at a later time in accordance with such case management deadlines as Magistrate Judge Schneider may set.

**UNITED STATES DISTRICT JUDGE**