IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**KENNETH JAMES NEWKIRK,**

        **Plaintiff,**

vs.                                                                                     Civ. No.  06-837 JH/WDS

**ZURICH AMERICAN INSURANCE
COMPANY,**

        **Defendant.**

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on three substantive motions: *Defendant Zurich American Insurance Company's Motion for Partial Summary Judgment on the Maximum Amount of Coverage Available to Plaintiff* [Doc. No. 63], *Plaintiff Newkirk's Motion for Partial Summary Judgement that Stacked Coverage Is Available to Plaintiff* [Doc. No. 82], and *Plaintiff Newkirk's Motion for Summary Judgment on Underinsured Motorist Coverage Limits Under the Zurich American Insurance Company Policy* [Doc. No. 80].  In addition, Plaintiff Kenneth James Newkirk ("Newkirk") has filed a motion for leave to file a surreply [Doc. No. 71].  The Court will grant Newkirk's motion for leave to file his surreply and has in fact considered the surreply brief in its analysis of the substantive pending cross motions for summary judgment.  With regard to those motions, the Court concludes that under New Mexico law, Newkirk is a Class 2 insured under the insurance policy at issue, and therefore he is not entitled to stack coverage.  However, the Court further concludes that Newkirk does have standing to challenge the amount of uninsured motorist ("UM") coverage under the Zurich American Insurance Company ("Zurich American") policy, and that the amount of such coverage is $2 million.

**STANDARD OF REVIEW**

The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed only by one party to the litigation. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). Summary judgment is therefore appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ .P. 56(c). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

In evaluating a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 1572 (1970). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In responding to a motion for summary judgment, however, the nonmoving party "may not rest upon its mere allegations ... but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324.

**DISCUSSION**

**I.    FACTS**

The Court set forth certain undisputed material facts in its Memorandum Opinion and Order

entered on January 10, 2008, and incorporates them herein. The following additional facts are undisputed.

The Declarations page of the Zurich American insurance policy initially showed that the coverage limits for both liability and UM was $1 million. Ex. 1 to Docket No. 80. Zurich American then issued an endorsement to the policy, effective March 31, 2005, which provides:

> The policy is amended as follows:
> Correcting liability limit to read $2,000,000 in lieu of $1,000,000
> No change in premium
> All other terms and conditions remain the same

The endorsement makes no specific mention of uninsured motorist coverage, and there is no evidence in the record as to whether Zurich American ever offered the insured, Souers Construction, Inc., UM coverage up to the new $2 million liability limit. The record contains no written rejection of such increased UM coverage by Souers Construction; indeed, Zurich American's response to a request for production indicates that none exists. *See* Exs. 3 and 4 to Doc. No. 81. Similarly, the record contains no evidence of the intent of Zurich American and Souers Construction with regard to the UM coverage, nor does it contain evidence regarding whether or not Souers Construction paid a premium for $2 million in UM coverage.

Newkirk was injured in a motor vehicle accident caused by an underinsured motorist on July 30, 2005.

## II.     ANALYSIS

### A.     Stacking

The first issue before the Court is whether Newkirk may "stack" all of the uninsured motorist coverages purchased by the insured, Souers Construction, Inc. Stacking refers to the insured's right

to aggregate the coverage under two or more UM policies (interpolicy stacking), or under one UM policy covering more than one automobile (intrapolicy stacking), until all the damages of the insured are satisfied or until the limits of the applicable policies are exhausted.  Newkirk contends that he is entitled to stack, while Zurich American argues that he is not.

New Mexico statutes and public policy strongly favor stacking.  *See* NMSA 1978, § 66-5-301 (1983) (requiring every automobile liability insurance policy issued in New Mexico to provide for insurance against uninsured motorists unless such coverage is rejected by the insured); *Rodriguez v. Windsor Ins. Co.*, 118 N.M. 127, 127, 879 P.2d 759, 759 (1994) (noting that New Mexico caselaw reflects a "strong judicial policy" favoring stacking).  However, New Mexico law does not require stacking when the policy clearly charges only a single premium for the UM coverage and it also unambiguously precludes stacking.  *Id.* ¶ 15.  Further, New Mexico's strong public policy favoring stacking applies to Class 1 insureds only.  *Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶¶ 22 and 33, 129 N.M. 698, 12 P.3d 960.  As the New Mexico Supreme Court explained in *Ponder*, "Class I insureds may stack all uninsured motorist policies purchased by the named insured because those policies were purchased to benefit the named insured and his or her family, but Class II insureds may only recover under the policy on the car in which they rode because the purchaser only intended occupants to benefit from that particular policy."  *Id.* at ¶ 22.  Thus, whether or not Newkirk may stack UM coverages depends on whether he is a Class 1 or a Class 2 insured under the Zurich American policy.  If the policy is unambiguous, the "insured" who is entitled to policy stacking is determined by the policy's language and definitions, and the coverage is enforced as written. *See Richardson v. Farmers Ins. Co. of Ariz.*, 112 N.M. 73, 74, 811 P.2d 571, 572 (1991).

The New Mexico Court of Appeals' decision in *Rehders v. Allstate Ins. Co.*, 2006-NMCA-

058, 139 N.M. 536, guides the Court in this case because in *Rehders*, the Court of Appeals interpreted policy language identical to that contained in the Zurich American policy's Uninsured Motorists Coverage Endorsement at issue here. That language states:

> If the Named Insured is designated in the Declarations as:
>
> 1. An individual, then the following are "insureds":
>
>    a. Any Class 1 "insured", meaning the Named Insured and any "family members".
>
>    b. Anyone other than a Class 1 "insured" "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
>
>    c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".
>
> 2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":
>
>    a. Any Class 2 "insured", meaning the Named Insured is not an individual Named Insured.
>
>    b. Anyone other than a Class 1 "insured" while "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction. Anyone other than a Class 1 "insured" includes the Named Insured's partners (if the Named Insured is a partnership), or members (if the Named Insured is a limited liability company), "employees", directors or shareholders;
>
>    c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

As this Court has previously decided, Newkirk is covered as a Class 2 insured under section (B)(2)(b) of this Endorsement because the named insured is a corporation and he is its employee—by definition, someone *other than* a Class 1 insured, e.g., a Class 2 insured—who was occupying the covered vehicle at the time of his injuries.

As is the case here, in *Rehders* the "named insured" was a corporation. The *Rehders* plaintiffs were corporate shareholders who wished to stack uninsured motorist coverage for their son under the corporation's commercial auto insurance policy. However, the son was not occupying a vehicle insured by the corporation at the time of the accident, nor was he connected with the corporation as an officer, director, stockholder, employee, or agent. The insurer argued that the son was not an "insured" under the policy and therefore was not entitled to uninsured motorist benefits. The court agreed, concluding first that under the applicable policy language, the son could not be a Class 1 insured, since the named insured was a corporation. *Id*. at ¶ 18. According to *Rehders*, an insured falls into "Class 1" only when the "named insured" is an individual, as opposed to a corporation or other entity. *Id*. A "Class 1 insured" is the individual named insured and any "family member" of that person. Next, *Rehders* concluded that any other insured falls under Class 2, including an employee of a corporation that is a named insured. *Id*. at ¶ 19. The *Rehders* court declined to find the policy language to be ambiguous. *Id*. at ¶¶ 23-24.

The analysis of *Rehders* offers further support for this Court's conclusion that Newkirk is a Class 2 insured under the Zurich American policy. Because the named insured is a corporation, it can have no family members and therefore the corporation is the only Class 1 insured. The unambiguous policy language provides that if the named insured is a corporation, then Class 2 insureds (that is, "anyone other than a Class 1 insured) are covered if, like Newkirk, they are employees of the named corporation who are "occupying" the covered vehicle at the time of injury. Thus, Newkirk is a Class 2 insured.

Newkirk's reliance upon *Konnick v. Farmers*, 103 N.M. 112, 703 P.2d 889 (1985)[1] is

---

[1] Indeed, Newkirk's counsel not only misapprehend the ruling in *Konnick*, but also they have actively misrepresented to this Court the contents of the *Konnick* opinion, an act in

unavailing. That case simply held that Class 1 insureds may stack underinsured motorist policies just as they would uninsured motorist policies. In so ruling, the New Mexico Supreme Court allowed Konnick to stack because she was a family member living with the individual named insured and therefore was a Class 1 insured. The *Konnick* court did not permit stacking for all insureds, whether Class 1 or Class 2, as Newkirk suggests. To the contrary, the *Konnick* opinion clearly draws the distinction between Class 1 and Class 2 insured and finds that only Class 1 insureds may stack. *Id*. at 892. Similarly, *Horne v. U.S. Fid. & Guar. Co.*, 109 N.M. 786, 791 P.2d 61 (1990), *overruled on other grounds*, *Jaramillo v. Providence Washington Ins. Co.*, 117 N.M. 337, is inapplicable because in that case, the New Mexico Supreme Court found that the insurance policy's uninsured motorist rider was ambiguous. Therefore, it construed the policy in favor of plaintiff, who was an employee of the named insured, and concluded he was a Class 1 insured who was entitled to stack under its terms. That is not the case here, where the policy language is clear and Newkirk is unambiguously a Class 2 insured under Zurich American's policy.

In short, because he is a Class 2 insured under the unambiguous terms of the Zurich American policy, Newkirk is not entitled to stack other uninsured motorist policies obtained by his employer. Accordingly, the Court need not reach the issue raised in Newkirk's surreply regarding the validity of an anti-stacking clause in the Zurich American policy.

---

violation of both the Rules of Professional Conduct and Rule 11 of the Federal Rules of Civil Procedure. Specifically, on page 4 of Newkirk's response to Zurich American's motion for summary judgment [Doc. No. 68], Plaintiff's counsel quote *Konnick* as follows: "[T]he terms 'named insured' and 'insured' are not synonymous, the latter being a broader category which encompasses the former, and stacking applies to an 'insured' as defined in the policy. (Emphasis added.)" The underlined portion of the quotation simply does not appear in the *Konnick* opinion, even though Plaintiffs' counsel represent it as part of the quotation from the case. Counsel's use of the parenthetical, "emphasis added," indicates that they intended to represent the underlined words as part of the quotation and that their inclusion was not a mere oversight.

**B.     Policy Limits**

Next, Newkirk argues that although the policy documents provide for only $1 million in UM coverage, the Court should read the policy to provide $2 million (the full amount of liability coverage) in such coverage because Zurich American failed to meet its obligation to offer UM coverage up to the limits of liability to Souers Construction.  In response, Zurich American argues that because it was a renewal policy, as opposed to a new policy, New Mexico law does not require that the insured explicitly reject UM coverage up to the full amount of liability coverage. Zurich American further contends that as a non-party to the insurance contract, Newkirk has no standing to request reformation of a term of that contract.

**1.     Standing**

Standing is a threshold issue, and therefore the Court will address it first.  As Zurich American acknowledges, New Mexico has not addressed the issue of whether a Class 2 insured who is entitled to benefits under an insurance policy but is not a named insured has standing to request reformation of the terms of the insurance contract.  Thus, Zurich American turns to cases from other jurisdictions to support its position.  These include an unpublished decision from the Delaware Superior Court, *Garnett v. One Beacon Ins. Co.*, 2002 Del. Super. LEXIS 176, C.A. No. 01C-07-118 RRC (Del. Super. July 24, 2002) (unpublished).  While this unpublished decision from Delaware supports Zurich American's position, the other cases it cites do not.  For example, in *McGlinchey v. Hartford Accident & Indem. Co.*, 866 F.2d 651, 655 (3d Cir. 1989), the Third Circuit, applying Florida law, concluded that a third-party driver of the insured's car lacked standing to raise a claim regarding the "technical deficiencies," such as whether the correct company official signed a document, in the insured's attempt to reject UM coverage.  In the same opinion the court concluded that the third party did have standing to challenge whether or not the insured made a knowing and

intelligent waiver of UM coverage. *Id*. at 656. *See also St. Paul Fire & Marine Ins. Co. v. Smith*, 504 So.2d 14, 15 (Fla. App. 1987) (same). *McGlinchey* and *Smith* are not helpful because Newkirk is not complaining of "technical deficiencies" in Souers Construction's rejection of UM benefits, but rather is arguing that no rejection occurred at all. The other cases cited by Zurich American, *Combs v. American Ins. Co.*, 177 S.W.2d 881 (Ky. 1944) and *Kerr v. New Amsterdam Cas. Co.*, 297 N.Y.S. 889 (N.Y. App. Div. 1937) are of significant age and contain no discussion of uninsured motorist coverage and the rights of a third party to reform an insurance contract to contain such coverage.

On the other hand, this Court is more persuaded by the reasoning in *Ammons v. Transp. Ins. Co.*, 219 F. Supp. 2d 885 (S.D. Ohio 2002). In *Ammons*, while acting in the course and scope of his employment, the plaintiff-employee was driving his employer-insured's truck and was injured by an uninsured motorist. The parties agreed that he was entitled to UM benefits, but plaintiff argued that he was entitled to $2 million in UM coverage--the same amount of liability coverage on the policy. The insurance company argued that plaintiff had no standing to make such a claim because he was a mere Class 2 insured and a non-party to the insurance contract. In rejecting this argument, the district court stated, "The parties do not dispute that Ammons is entitled to recover benefits under the Policy. The fact that he was not in a direct contractual relationship with Allstate is irrelevant to the need to determine the extent of the benefits to which he is entitled." *Id*. at 889-90. Similarly, in *Union American Ins. Co. v. Cabrera*, 721 So.2d 313 (Fla. App. 1998), the court found that under Florida law a truck driver who was covered by the policy, but not a named insured, had standing to raise the question of whether the named insured had rejected UM coverage. *Id*. at 315 n. 2. That is the case here. Zurich American does not dispute that Newkirk is a Class 2 insured entitled to UM benefits under the policy. The real question is the extent of those benefits, and this

9

Court concludes that Newkirk has standing to request a determination on the extent of those benefits.

### 2. Amount of UM Coverage

The New Mexico UM statute, NMSA 1978, § 66-5-301(A), provides that no automobile liability insurance policy shall be issued without certain minimum UM coverage limits, and that such limits may go up to the limits of liability specified in the liability portion of the policy. Newkirk argues that Zurich American was obligated to offer Souers Construction UM coverage up to the full liability limit of $2 million, and that because it apparently failed to do, and because Souers never made a valid rejection of such coverage, the Court should read the policy to include $2 million in UM coverage, rather than the $1 million that appears on the face of the policy documents.

In support of his argument, Newkirk relies heavily upon Judge Browning's decision in *Farm Bureau Mut. Ins. Co. v. Jameson*, 472 F. Supp. 2d 1272 (D.N.M. 2006). In that case, the policy at issue was a renewal policy. The named insureds never signed forms that specifically contained a rejection of UM coverage up to the full amount of liability coverage. *Id*. at 1275. However, they did sign an application for insurance that listed UM coverage at the statutory minimum amount. *Id*. The named insureds sought UM coverage up to the full amount of liability coverage for their son, a Class 1 insured, on the grounds that they had never signed a written rejection of UM coverage equal to the liability limits. *Id*. Judge Browning agreed, concluding that "if the New Mexico Supreme Court confronted this issue, it would find that New Mexico law requires that UM coverage equal to liability limits be read into an insurance policy where the insured did not validly reject UM coverage in amounts equivalent to liability limits." *Id*. at 1285. In reaching his decision, Judge Browning relied upon a variety of authorities, including the New Mexico Supreme Court's opinion in *Romero v. Dairyland Ins. Co.*, 111 N.M. 154,155 (1990), in which the court stated that "unless the named insured rejects [UM] coverage in a manner consistent with the requirements imposed by

10

the superintendent of insurance, *uninsured motorist coverage will be read into the insured's automobile insurance policy regardless of the intent of the parties or the fact that a premium has not been paid*." (emphasis added).  The *Romero* court found that an insured may reject UM coverage, but that to be valid such a rejection must satisfy the applicable regulations, including that it be made a part of the policy in some form.  *Id*. at 156.  The Supreme Court also noted that Section 66-5-302 is a remedial statute and should be liberally interpreted to further its purpose.  *See Jameson*, 472 F. Supp. 2d at 1278 (citing *Romero*, 111 N.M. at 156).  In addition, Judge Browning cited *Kaiser v. DeCarrera*, 1996-NMSC-050, 122 N.M. 221, for the proposition that "unless the named insured rejects UM coverage in a manner consistent with statutory and administrative requirements, UM coverage shall be read into an insured's policy regardless of the parties' intent or the fact that a premium has not been paid."  *Jameson*, 472 F. Supp. 2d at 1278.  Next, Judge Browning relied upon *State Farm Mut. Auto. Ins. Co. v. Marquez*, 2001-NMCA-053, ¶ 7, 130 N.M. 591, in which the New Mexico Court of Appeals held that because the purpose of Section 66-5-310 is to protect an insured as though the uninsured motorist had liability insurance, the geographical scope of a policy's liability coverage dictates the bounds of its UM coverage.  Similarly, the amount of liability coverage dictates the financial bounds of UM coverage unless specifically rejected by the insured.  Finally, Judge Browning cited to the decision of New Mexico First Judicial District Court Judge James Hall in *Klecan v. American Nat'l Property and Cas. Co.*, D-101-CV-020011705 (First N.M. Dist. Ct. 2001),  in which Judge Hall concluded that an insurance company has an affirmative duty to offer the insured UM coverage up to the full liability limits:

> [T]he only way to effectively implement the legislative intent of requiring UM coverage with limits equal to liability coverage is to place a duty on the insurance company to inform an individual of that obligation, that right, and to affirmatively offer that coverage to an insured.  The Legislature has chosen statutorily to require that UM

> coverage be made available up to the liability limits, that the only
> way to effectively implement that is to place a duty on the insurance
> company to make that offer and to determine whether there has been
> a knowing rejection of that offer.

472 F. Supp. 2d at 1282 (quoting *Klecan*). Based upon the foregoing, Judge Browning concluded that "*Romero*'s 'read in' rule is applicable in cases where it is held that an insured did not reject UM coverage in amounts equivalent to liability limits in an appropriate fashion, and that, in such circumstances, UM coverage at liability limits should be read into a policy." *Id*. at 1285.[2] After considering the rationale set forth in *Jameso*n regarding UM limits, as well as reviewing the authorities upon which that rationale rests, the Court concurs with Judge Browning's reasoning and finds that UM limits of $2 million should be read into the Zurich American policy.

This Court is aware that earlier this year, the New Mexico Court of Appeals criticized Judge Browning's *Jameson* decision in *Marckstadt v. Lockheed Martin Corp. Missiles & Fire Control*, 2008-NMCA-138, -- N.M. --, 194 P.3d 121. Specifically, the *Marckstadt* court disagreed with Judge Browning's holding that a rejection of UM coverage must be signed by the insured, which is not at issue in the present case. *Id*. at ¶ 17, 20. Importantly, *Marckstadt* did not reach the question presented here, which is whether or not one should read UM coverage up to the level of liability limits into an insurance policy where an insurer either failed to offer such limits or failed to obtain a valid rejection of those limits. *Id*. at ¶ 19 ("We express no opinion regarding whether an insurer is required to offer UM coverage up to liability coverage limits because that issue is not before us."). Thus, *Marckstadt* does not undermine the conclusion the Court reaches in this case.

Zurich American suggests that an insurer need not offer the insured UM coverage up to the

---

[2] Judge Browning also cited opinions from courts in four other states reaching a similar conclusion under the applicable UM statutes.

limits of liability coverage when, as here, the liability limits are increased in a policy renewal. Instead, it contends that an insurer must offer UM coverage up to the limits of liability coverage only in a brand new policy. For this proposition, Zurich American relies upon the New Mexico Court of Appeals' decision in *Vigil v. Rio Grande Ins. of Santa Fe*, 1997-NMCA-124, 124 N.M. 323. However, that case is distinguishable because there, the insured plaintiffs in fact did make a valid rejection of UM coverage when the defendant insurance company issued the policy. *Id*. at ¶ 2. Thus, the Court of Appeals concluded that, in light of that previous rejection, New Mexico law did not require the insurer to re-offer UM coverage to the insureds each time it issued a renewal of the policy. *See id.* at ¶¶ 14-16. However, the insured in this case, Souers Construction, made no previous rejection of UM coverage. Instead, at the time of the issuance of the policy Souers Construction apparently selected UM coverage up to $1 million, the full amount of its liability limits. Thus, this Court remains convinced that Zurich American was required to offer increased UM coverage to Souers Construction when it increased the limits of liability coverage.

Here, the undisputed facts currently in the record show that Zurich American did not meet its duty to offer such increased UM coverage to Souers Construction, and that Souers Construction never validly rejected such coverage. Accordingly, the Court concludes that under New Mexico law, UM limits of $2 million should be read into the policy, and Newkirk's motion for summary judgment should be granted.

**IT IS THEREFORE ORDERED** that:

(1) *Defendant Zurich American Insurance Company's Motion for Partial Summary Judgment on the Maximum Amount of Coverage Available to Plaintiff* [Doc. No. 63] is **GRANTED**;

(2) *Plaintiff Newkirk's Motion for Partial Summary Judgement that Stacked Coverage Is Available to Plaintiff* [Doc. No. 82] is **DENIED**;

(3)  *Plaintiff Newkirk's Motion for Summary Judgment on Underinsured Motorist Coverage Limits Under the Zurich American Insurance Company Policy* [Doc. No. 80] is **GRANTED**; and

(4)  Plaintiff Newkirk's motion for leave to file a surreply [Doc. No. 71] is **GRANTED**.

                                                          _____
                                                          **UNITED STATES DISTRICT JUDGE**